## A. J. WINN v. THE STATE.

### No. 5252. Decided January 22, 1919.

**Burglary—Accomplice Testimony—Charge of Court.**

Where, upon trial of burglary, the evidence raised the issue of accomplice testimony, the court's failure and refusal to charge on the law of accomplice testimony was reversible error.

Appeal from the District Court of Kaufman. Tried below before the Hon. Joel R. Bond.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

*Lee R. Stroud,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary, his punishment being assessed at two years confinement in the penitentiary.

The case is one of circumstantial evidence. This is the second appeal. It was previously reversed because the court failed and refused to charge the law applicable to a case of circumstantial evidence. This time the charge was given.

A lengthy bill of exceptions setting out practically all the facts in the case was reserved to the court's failure and refusal to charge the law of accomplice testimony. The matter is properly presented for revision. The State's case was made by two witnesses, the alleged owner of the burglarized house and Godfrey. The owner of the house was named Gillis. He testified he was doing a tailoring and dyeing business; that he closed his shop in the evening, went home, and the next morning found the front door about three or four inches ajar, and that someone had entered his shop; that he missed a lot of clothing from the establishment; that he had never seen any of the clothing since, unless it was a blue serge coat which he undertakes to describe as being found on defendant in the City of Dallas some time after the alleged burglary. This burglary occurred in Forney, Kaufman County. In connection with this the witness Gillis testified he was standing on the corner of Elm and Central Avenue, near the old union depot in Dallas, and he saw defendant come in from Forney on the train; that in leaving the train he passed along near where he was standing going to Elm Street, and that he whistled at defendant, who turned and looked toward him, and ran across the street and passed out of his sight. He went across the street to a saloon and called the police, and waited not exceeding ten minutes at the outside. Defendant came back and entered the saloon where he was. He says further: "When I saw him pass the corner of Elm and Central, where I was watching, as I stated, and where. I whistled for him and he looked around towards me, he had on a blue serge coat that I recognized as the missing coat, and that caused me to whistle at him, and when he had run across Elm, as I said, and out of sight and returned about five or ten minutes later to where I was in the saloon, as just stated, he had changed the blue serge coat and had on a sweater, and then I had him arrested." He also had Jesse Poindexter arrested at the same time, who had come to Dallas and was seen with defendant. Poindexter was later discharged from custody. Further testifying with reference to the identity of the coat he says: "I do not know what become of that coat; I have never gotten it. This burglary occurred about December 10, 1916, in Kaufman County, Texas, and the blue serge coat which I recognized on defendant in Dallas on the day he was arrested was missed and taken out of my place of business on the night of the burglary. It looked like my coat; I could be mistaken." Witness was some distance from the defendant, who was

going away from him, as he further testified, and he identified the coat only by seeing it on defendant, who had his back towards him. With the exception of this article this witness did not undertake to identify any goods in possession of the defendant and seems to have known nothing further about who entered his house than connected with the blue serge coat.

By the witness Godfrey the State undertook to connect defendant with the burglary of the house. In regard to the blue serge coat this witness testified that it was his coat, and he let defendant have it to wear to Dallas; that it was his property, and mentioned the circumstances under which he let defendant have it. Further testifying, he says: "Two or three days before the burglary of Gillis' shop and on or about December 8, 1916, I had a conversation with defendant. He was at my father's shoe shop in Forney and asked me if I wanted to make some money. I asked him how. He said, 'We will get some clothes.' I asked him where. He said, 'Here in Forney.' I said, 'How will we get them?' He said, 'Steal them.' I told him, 'No, I didn't want to help him.' A day or two before this conversation I had another conversation with him, a short one; he come to me with a pair of pants and asked me to let him put the pants there in my shoe shop; the pants had been stolen a day or two before then. I told him I could not do that; they were liable to come there and search the house and find the pants and swear that I was the one that stole them. They were brown pants; that was before the burglary two or three days." It may be here stated that Gillis said he lost a pair of brown pants. This witness further testifying says that "after the burglary defendant came to me in Dallas and asked me did I want to help him sell the clothes. I asked, 'Where are they at?' He says, 'Over here.' I said, 'Where did you get them?' He says, 'I got them in Forney; don't you know whose clothes I was talking about?' I says, 'Yes.' He says, 'Well, they are here, don't you want to help me sell them?' I said, 'No, I had rather help steal them than to help sell them.' He did not say after we were in Dallas where he got them, but told me in Forney he was going to get them at Dave Gillis' shop. That is where he said they were located. He told me he got them at the same place he got the brown pants. The conversation about the pants occurred two or three days before the burglary when he came to my shop with the pants. Then after that was when he came to me and asked if I wanted to make some money; it was at my shoe shop, and I told him I would not do that. And after the burglary and before the conversation in Dallas he had one other conversation with me in Forney on Sunday; he asked me did I want to help him make way with the clothes, and said he had done got them; that he had got them at the same place he got the pants. The conversation in Dallas was the last one and was the day he was arrested." On cross-examination he says: "I saw him (appellant) in Forney about two weeks before the burglary and he spoke of going to Dallas; his coat was light and it was cold. I loaned him a coat which

he wore to Dallas before the burglary; it was a blue serge coat; he wore it to Dallas about two weeks before the burglary, and I never got the blue serge coat any more. I never looked it up and don't know what became of it. The reason I did not testify about the blue serge coat on a former trial of this case was that I was not asked about that."

The first witness, Gillis, also testified that appellant stated to him in Dallas when he had him arrested, that he had sold the goods at a pawnshop in the west end of Dallas. So far as this record is concerned there was no search made for clothes said to have been sold at the pawnshop, and there was no identification of them, or any further fact in connection with the sale at the pawnshop, except as above stated. Outside of the statement of the defendant to the witness Godfrey that he had got them at the same place that he got the brown pants, there is nothing to indicate, except his statement, that they were talking about Gillis' shop. Nobody ever saw appellant in possession of the goods, unless it was this witness Godfrey. Defendant and his father proved a clear alibi for him on the question of breaking, and if the facts are true he did not break into the shop of Gillis, and in fact they show, as does Gillis, their residence, or part of the house they occupied, was part of the same house occupied by Gillis, and that there were doors between the part of the house occupied by defendant's father, with whom defendant lived, and Gillis' shop, Gillis having rented that part of the house from defendant's father, and that people frequently went in through that door, and it was kept open a great deal of the time. Defendant denies the whole transaction, and states he did not enter the house, or take any of the goods, and denies the conversation with Godfrey with reference to the clothing. If his testimony is to be credited, he had nothing to do with the transaction, to which he also testified with reference to the blue serge coat; that he had it on at the time indicated by Gillis, and had it on when arrested, and was carried to jail with the coat on, and it was rather large for him and he traded it while in jail to another party and secured the sweater there. None of the officers or parties who had control of him were called to testify with reference to this matter. These matters are mentioned because they bear upon the question as to whether or not a charge on accomplice testimony should have been given. We are of opinion the charge should have been given. The identification of the coat by Gillis was very indefinite, but if it was his coat that was taken, then the State proved beyond any question that the witness Godfrey let defendant have a blue serge coat. The defendant testified he got the blue serge coat from Godfrey; that he knew nothing about the blue serge coat except the fact that Godfrey let him have it to wear to Dallas, and the circumstances under which he did get it. It was cold weather, and the coat at the time appellant was wearing was light weight, and Godfrey let him have a blue serge coat because it was heavy and he wanted to go to Dallas to see an aunt. This is shown by Godfrey and defendant. With reference to the conversation between Godfrey and appellant in Dallas about

the clothing and selling, etc., there is yery serious doubt as to whether it occurred. The State's witness Gillis testified appellant got off the train and started across to the corner of Elm and Central Avenue when he saw him. If that was true, then the conversation between Godfrey and appellant could not have occurred with reference to asking him to assist him, appellant, in selling the goods. If the blue serge coat was the coat taken, then appellant did not take it under the State's testimony, and it would show that Godfrey took the coat; if it was Godfrey's coat and not taken from Gillis' shop, then appellant was not connected. with the identification of any of the goods taken, except by Godfrey, which has already been stated. Under these circumstances we are of opinion the court should have given a charge on accomplice testimony.. Whether the jury believed those things is not the question. The issue; was presented by the testimony, and Godfrey is so mixed up in his testimony and his actions with this matter that the jury should have been. required to pass upon his testimony as viewed in the light of his being; an accomplice   If he was an accomplice, it would be necessary to corroborate him with reference to appellant's connection with the goods.. It is a doubtful issue as to whether there was a burglary at all or not.. If appellant went into an open door from where he was sleeping in his; father's house into the store and went out the front way, it would not. be burglary. If he went in that way and got the goods he might have been charged with theft but not burglary. Gillis stated the front door· was open a few inches, but that is all he knew about the matter, and the fact that he lost the goods. We are of opinion that the charge on accomplice testimony under the facts stated should have been given, and because it was not this judgment will be reversed and the cause remanded.

*Reversed and remanded.*